[Cite as *State v. Kegley*, 2016-Ohio-8467.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO.  3-16-06

    v.

BART W. KEGLEY,                     O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Crawford County Common Pleas Court
Trial Court No. 14-CR-0072

**Judgment Affirmed**

Date of Decision:   December 29, 2016

APPEARANCES:

    *Adam Charles Stone* **for Appellant**

    *Matthew E. Crall* **for Appellee**

**SHAW, P.J.**

{¶1} Defendant-appellant, Bart W. Kegley, appeals the May 26, 2016, judgment of the Crawford County Court of Common Pleas revoking his community control sanctions and imposing a prison term of sixty-seven months. On appeal, Kegley argues that the trial court erred in (1) revoking his community control, (2) failing to notify him that he would be subject to a specific term of prison upon violating community control, and (3) imposing a prison term not supported by the record.

{¶2} On April 14, 2014, the Crawford County Grand Jury returned a three-count indictment against Kegley on Count One: Possession of Drugs—to wit: Marijuana, in violation of R.C. 2925.11(C)(3)(d), a felony of the third degree; Count Two: Possession of Drugs—to wit: cocaine, in violation of R.C. 2925.11(C)(4)(a), a felony of the fifth degree; and Count Three: Illegal Cultivation of Marijuana, in violation of R.C. 2925.04(A) & (C)(5)(d), a felony of the second degree, due to the allegation that the offense was committed in the vicinity of a juvenile. Kegley pleaded not guilty to the charges.

{¶3} On September 23, 2014, Kegley entered into a negotiated plea agreement and plead guilty to Counts One and Two as stated in the indictment, and Count Three was amended to remove the allegation that the offense was committed in the vicinity of a juvenile, thereby reducing the level of the offense to a felony of

the third degree. The plea agreement called for Kegley to be sentenced to a five-year term of community control with the understanding that Kegley is subject to a total prison term of eighty-four months if he failed to complete the term of community control. On the same day, the trial court accepted Kegley's guilty pleas and entered a sentence consistent with the terms of the plea agreement. Accordingly, pursuant to its September 23, 2014 Judgment Entry, Kegley was placed on a five-year term of community control and was notified that he is subject to an eighty-four-month prison term if he failed to successfully complete community control.

{¶4} On August 24, 2015, a motion was filed by State Probation Officer Mark Stalter requesting the trial court issue a show cause order for Kegley to demonstrate why his community control should not be revoked. Probation Officer Stalter alleged that Kegley had violated the terms of his community control supervision on or about August 19, 2015, by (1) possessing marijuana, (2) possessing drug paraphernalia, (3) testing positive for the use of Cocaine, and (4) testing positive for the use of Marijuana.

{¶5} On November 30, 2015, Kegley appeared before the trial court for a hearing on the motion for revocation of his community control. Kegley admitted to violating the terms of his community control and the case proceeded to sentencing. In its December 7, 2015 Judgment Entry, the trial court revoked Kegley's

community control based upon his admissions at the hearing and other matters evidencing Kegley's conduct while on supervision. The trial court then imposed the maximum prison term on each of the three counts and ordered the prison terms to run consecutively for a total stated prison term of eighty-four months.

{¶6} Kegley appealed the trial court's decision to revoke his community control and to impose a prison term of maximum, consecutive sentences.

{¶7} On May 16, 2016, this Court reversed the trial court's sentence as contrary to law because it failed to make the statutory findings necessary to impose consecutive sentences found in R.C. 2929.14(C)(4). Accordingly, the case was remanded to the trial court. *See State v. Kegley*, 3d Dist. Crawford No. 3-15-20, 2016-Ohio-2983.

{¶8} On May 25, 2016, the trial court held a new hearing on the motion for revocation of Kegley's community control. Kegley again admitted to the conduct comprising the violations of his community control. The trial court heard extensive arguments from both parties regarding the consequences for Kegley's violations. The State advocated for the imposition of a prison term, while defense counsel insisted that an alternative sanction would be more appropriate. After considering the arguments from both sides and reviewing documentation from an outpatient drug treatment center submitted by Kegley, the trial court stated on the record its findings based upon the relevant statutory factors to support its decision to impose

a prison term. The trial court then imposed a prison term of thirty months on Count One, Possession of Marijuana, a seven-month prison term on Count Two, Possession of Cocaine, and a thirty-month prison term on Amended Count Three, Illegal Cultivation of Marijuana. The trial court ordered the prison terms to run consecutive for a total stated prison term of sixty-seven months.

{¶9} Kegley filed this appeal, asserting the following assignments of error.

### ASSIGNMENT OF ERROR NO. I
**THE TRIAL COURT COMMITTED PLAIN ERROR IN VIOLATION OF R.C. 2929.13(E)(2) WHEN IT REVOKED APPELLANT'S COMMUNITY CONTROL AND SANCTIONED HIM TO ANY PRISON TERM IN CONNECTION WITH THE VIOLATION OF APPELLANT'S COMMUNITY CONTROL IN DIRECT CONTRAVENTION OF THE STATUTE'S PROHIBITION.**

### ASSIGNMENT OF ERROR NO. II
**THE TRIAL COURT'S FINDINGS OF FACT UNDER R.C. 2929.12, R.C. 2929.13(E)(2), R.C. 2929.14, AND R.C. 2929.15(B) ARE NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE IN THE RECORD OF THE PROCEEDINGS HELD BY THE TRIAL COURT ON MAY 25, 2016.**

### ASSIGNMENT OF ERROR NO. III
**THE TRIAL COURT COMMITTED PLAIN ERROR IN VIOLATION OF R.C. 2929.15(B)(5) WHEN IT REVOKED APPELLANT'S COMMUNITY CONTROL AND SANCTIONED HIM TO A PRISON TERM WITHOUT SPECIFICALLY NOTIFYING APPELLANT OF THE SPECIFIC PRISON TERM TO WHICH HE WOULD BE SUBJECT FOR VIOLATING COMMUNITY CONTROL.**

{¶10} For ease of discussion, we elect to address the assignments of error together and out of order.

### *Third Assignment of Error*

{¶11} In his third assignment of error, Kegley maintains that the trial court erred at his original sentencing hearing in 2014 when it placed him on five years of community control and failed to adequately notify him that he is subject to a specific prison term if he violated the terms of his community control. The premise of Kegley's argument is based purely on semantics. Kegley claims that upon placing him on community control in 2014, the trial court only informed him that he was "subject to" an eighty-four-month prison term if he violated the terms of his community control, and asserts that he was not notified by the trial court that it *"would"* impose a prison term, as opposed to an alternative sanction, as a consequence of his community control violations.

{¶12} The record establishes that the trial court notified Kegley in the sentencing entry placing him on community control that "if [he] fails to successfully complete community control that [he] is subject to thirty-six (36) months of prison on Count I; twelve (12) months in prison on Count II; and thirty-six (36) months [in] prison on *amended* Count III for a total of eighty-four months in prison." (Doc.

No. 23 at 2).[1] Kegley has not cited any relevant authority to support his position on appeal. Rather, the cases he cites involve scenarios distinguishable from the one implicated in the case at hand. Accordingly, we find no merit in Kegley's argument that he received inadequate notification of the possible prison sanctions for violating his community control.

### *First Assignment of Error*

{¶13} In his first assignment of error, Kegley argues that the trial court committed plain error in revoking his community control and in imposing a prison term upon him for violating the terms of his community control. Specifically, Kegley directs this court to R.C. 2929.13(E), which states:

> **(1)   Except as provided in division (F) of this section, for any drug offense that is a violation of any provision of Chapter 2925. of the Revised Code and that is a felony of the third, fourth, or fifth degree, the applicability of a presumption under division (D) of this section in favor of a prison term or of division (B) or (C) of this section in determining whether to impose a prison term for the offense shall be determined as specified in section 2925.02, 2925.03, 2925.04, 2925.05, 2925.06, 2925.11, 2925.13, 2925.22, 2925.23, 2925.36, or 2925.37 of the Revised Code, whichever is applicable regarding the violation.**
>
> **(2)   If an offender who was convicted of or pleaded guilty to a felony violates the conditions of a community control sanction imposed for the offense solely by reason of producing positive results on a drug test, the court, as punishment for the violation of the sanction, shall not order that the offender be imprisoned unless the court determines on the record either of the following:**

---

[1] A transcript of the original sentencing proceedings was not made a part of the record. Therefore, we shall presume regularity in those proceedings that the same notification was given to Kegley in open court.

> **(a) The offender had been ordered as a sanction for the felony to participate in a drug treatment program, in a drug education program, or in narcotics anonymous or a similar program, and the offender continued to use illegal drugs after a reasonable period of participation in the program.**
>
> **(b) The imprisonment of the offender for the violation is consistent with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code.**

{¶14} On appeal, Kegley characterizes his violations of community control as solely producing a positive drug test. However, in addition to testing positive for marijuana and cocaine on August 19, 2015, Kegley was also found to be in possession of marijuana and in possession of drug paraphernalia. Thus, because Kegley's violations of his community control sanctions were not based solely on a positive drug test, R.C. 2929.13(E)(2) was not implicated. Even assuming, *arguendo*, that R.C. 2929(E)(2) applies to this case, the trial court stated on the record that it considered principles and purposes of sentencing in R.C. 2929.11 and found imposing a prison term for Kegley's violations of community control to be appropriate. Accordingly, we find no merit in Kegley's contention on this basis and overrule the first assignment of error.

## *Second Assignment of Error*

**{¶15}** In his second assignment of error, Kegley argues that the trial court's decision to impose a prison sentence, instead of an alternative non-residential sanction or drug treatment program, for his violations of community control is not supported by the record.  Pursuant to the Supreme Court of Ohio's recent holding in *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 7, this court will review a felony sentence using the standard set forth in R.C. 2953.08.  Section 2953.08 of the Revised Code governs appeals based on felony sentencing guidelines.  Subsection (G)(2) sets forth this court's standard of review as follows:

> **(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.**
>
> **The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion.  The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:**
>
> > **(a)   That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;**
> >
> > **(b)   That the sentence is otherwise contrary to law.**

**{¶16}** The Supreme Court in *Marcum* also declared that "it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court. That is, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *Marcum* at ¶ 23.

**{¶17}** Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, (1954), paragraph three of the syllabus.

**{¶18}** Revised Code Chapter 2929 governs sentencing. Revised Code 2929.11 provides, in pertinent part, that the "overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). In advancing these purposes, sentencing courts are instructed to "consider the need for incapacitating the

offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." Id.

{¶19} Meanwhile, R.C. 2929.11(B) states that felony sentences must be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim" and also be consistent with sentences imposed in similar cases.  In accordance with these principles, the trial court must consider the factors set forth in R.C. 2929.12(B)-(E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism.  R.C. 2929.12(A).

{¶20} "Although the trial court must consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors listed in R.C. 2929.12, the sentencing court is not required to 'State on the record that it considered the statutory criteria or discuss[ed] them.' *State v. Maggette*, 3d Dist. Seneca No. 13–16–06, 2016-Ohio-5554, ¶ 32, quoting *State v. Polick*, 101 Ohio App.3d 428, 431 (4th Dist.1995). "A trial court's statement that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under the sentencing statutes." *Id.*, citing *State v. Abrams*, 8th Dist. Cuyahoga No. 103786, 2016–Ohio–4570, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 18.

{¶21} On remand in this case for resentencing, the trial court devoted a great deal of time on the record to stating its reasons supporting its determination that a

prison sentence was the appropriate sanction for Kegley's community control violations. As previously indicated, Kegley admitted to his conduct consisting of the four violations of his community control: (1) possessing marijuana, (2) possessing drug paraphernalia, (3) testing positive for marijuana on a drug test, and (4) testing positive for cocaine on a drug test.

{¶22} In determining the appropriate sanction for Kegley's community control violations, the trial court discussed his prior criminal record which was detailed in the post-sentence investigation report. The trial court noted that in 1995 Kegley committed criminal damaging by slashing tires in a parking lot. When law enforcement apprehended Kegley, they found brass knuckles in his possession. The trial court stated that it did not intend to give this offense "a huge amount of weight in this particular case," but stated it was significant because "that's the beginning of when criminal behavior began to creep up" in Kegley's life. (May 25, 2016 Hrg. at 25).

{¶23} In 2011, Kegley was convicted of minor misdemeanor possession of marijuana. Two years later, in 2013, Kegley was convicted of possession of marijuana in violation of a Crestline City Ordinance. The trial court noted that the facts of the offense indicated that Kegley's vehicle was pulled over by law enforcement and $827.90 in small bills was found in the vehicle, in addition to the marijuana. Kegley received thirty days in jail suspended and was placed on two

years of community control. It was while Kegley was on community control for this prior case that he committed the drug-related felonies in this case.

{¶24} The trial court also discussed the underlying felony offenses for which Kegley was placed on the five-year term of community control in this case. In March of 2014, the Crawford County Sheriff's Office executed a search warrant of Kegley's home, based upon information from a source who indicated that Kegley maintained and sold a large amount of marijuana from his home, and also sold smaller amounts of cocaine.

{¶25} Law enforcement indicated that the odor of marijuana was overpowering upon entering the home. Officers encountered an eighteen-year-old and a sixteen-year-old, who appeared to be the children of Kegley and his longtime girlfriend and co-defendant. A fifteen-year-old girl was also found in the home. Law enforcement made contact with Kegley and took him into custody as he began yelling out a string of numbers to his girlfriend. Kegley's girlfriend was found in the master bedroom with a large quantity of marijuana and a loaded .22 rifle. She was also taken into custody. A sweep of the home revealed several drug paraphernalia items, various quantities of marijuana stashed throughout the home, and a smaller amount of cocaine. Nine firearms, many loaded with ammunition, were also found in the home. Some of these firearms were located in a gun safe, along with some cash and a large amount of marijuana, and some were found

strategically hidden in places—e.g., three handguns were found on top of the furnace ducts. Two of the juveniles were found in the basement where a large quantity of marijuana and the three handguns were located.

{¶26} The officers moved to the pole barn where the source had indicated a large amount of marijuana was stored. There, they discovered a grow operation consisting of 93 marijuana plants, along with grow lights, buckets, gauges, heating items, large amount of potting soil and other marijuana-related grow items.

{¶27} The trial court found it significant that Kegley's criminal record demonstrated that "[a]t no point has he ever been able to successfully complete any community control." (May 25, 2016 Hrg. at 36). The trial court also noted the significance of the nature of Kegley's community control violations in this case— i.e., possession of marijuana and of drug paraphernalia—as being very similar to the underlying offenses for which he was placed on community control, which also indicated a lack of amenability to community control sanctions.

{¶28} For his part, Kegley maintained that he sought treatment at Maryhaven, a local outpatient drug treatment facility, and claimed to take his substance abuse treatment seriously. Kegley provided documents from Maryhaven to the trial court, which demonstrated that he took six urine drug test at the facility, with one test producing a negative result and five producing an "inconclusive" result

due to his creatine level being out of range, indicating that his urine had been diluted. (May 25, 2016 Hrg. at 33).

{¶29} In considering this proposed mitigating evidence, the trial court stated that "[n]ow, the Court is quite familiar with creatine being out of range. And, in fact, if you look down here [referring to the test results documentation] where they talk about his tests they gave him, let me see, there's one, two, three, four, five, six, they actually say one negative test but they actually consider those five [inconclusive results] positive tests if you want to go all the way down and look at the fine print." (*Id.*) The trial court observed that "it appears Mr. Kegley was saying the right things. It doesn't appear that he was doing the right things" and noted that Kegley had demonstrated a pattern of either avoiding or failing to take drug treatment seriously. (*Id.* at 34, 36).

{¶30} In addition to the four violations of his community control, to which he admitted, the trial court also cited the severity of the underlying facts in this case, Kegley's criminal history, specifically his unsuccessful completion of community control, and his lack of commitment to drug treatment as factors supporting its decision to revoke Kegley's community control and to impose a prison term upon him. The trial court also determined on the record that the imposition of a sixty-seven-month prison term was consistent with the principles and purposes of felony sentencing stated in R.C. 2929.11 and the recidivism factors in R.C. 2929.12.

**{¶31}** With regard to consecutive sentencing, we note that even though the trial court made the appropriate findings on the record pursuant to R.C. 2929.14(C)(4) to impose consecutive sentences, the trial court failed to incorporate those statutory findings in its judgment entry. The Supreme Court of Ohio has held that the findings required by R.C. 2929.14(C)(4) must be made at the sentencing hearing *and* included in the sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, syllabus. However, a trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a *nunc pro tunc* entry to reflect what actually occurred in open court. *Bonnell*, ¶ 30.

**{¶32}** For the reasons stated above, we conclude that Kegley failed to prove by clear and convincing evidence that the record does not support the trial court's sentence in this case. Therefore, we do not find the sentence entered by the trial court to be contrary to law and overrule the second assignment of error.

**{¶33}** The trial court's judgment is hereby affirmed. This matter is remanded solely for the trial court to enter a *nunc pro tunc* entry that includes the consecutive sentencing findings that it made at the May 26, 2016 resentencing hearing.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**